IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

| | | |
|---|---|---|
| DANNY VANOVEN, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | 3:05CV00256 SWW |
| | * | |
| WESTERN RIVERS BOAT MGMT., INC., | * | |
| | * | |
| Defendants. | * | |

**Memorandum Opinion and Order**

Plaintiff Danny Vanoven brought this action against defendant Western Rivers Boat Management, Inc. for negligence under the Jones Act and unseaworthiness. The matter was tried to a jury on April 23-27, 2007, in Jonesboro, Arkansas. The jury returned a verdict for plaintiff and awarded him compensatory damages in the amount of $900,000.00. The matter is now before the Court on defendant's motion for a new trial pursuant to Fed.R.Civ.P. 59, and motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b). For the reasons that follow, the Court finds the motions should be denied.

**Motion for New Trial**

"A motion for a new trial may be 'bottomed on the claim that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury.'" *Children's Broadcasting Corp. v. Walt Disney Co.,* 245 F.3d 1008, 1017 (8th Cir. 2001) (quoting *Montgomery Ward & Co. v. Duncan,*

311 U.S. 243, 251 (1940). In deciding defendant's motion for a new trial, the Court must find "that prejudice or error has crept into the record, that the verdict is against the clear weight of the evidence, or that substantial justice has not been done." *Greenwood v. Dittmer,* 596 F. Supp. 235, 239 (W.D.Ark. 1984), *aff'd,* 776 F.2d 785 (8th Cir. 1985).

Defendant argues it suffered prejudice because plaintiff did not provide it with a computation of his damages prior to trial and because the Court allowed a witness to testify in contravention of the Court's order granting defendant's motion in limine. Defendant asserts these errors deprived it of a fair trial.

**1. Computation of Damages**

According to Fed.R.Civ.P. 26(a)(1)(C),

a party must, without awaiting a discovery request, provide to the other parties:
.  .  .  .

(C) a computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered;  .  .  .

Defendant states plaintiff never supplied it with any disclosures under Rule 26(a)(1), much less a computation of damages. Defendant says it sought by way of interrogatories to ascertain the computation of damages but plaintiff did not provide such computation prior to trial. On April 24, the second day of trial, defendant's attorney asked plaintiff on cross-examination to tell the jury the amount of damages he would ask them to award. Plaintiff responded that he did not know what amount he was asking the jury to award for future lost wages or pain and suffering. He said he was leaving those numbers up to his lawyers. Tr. vol. 2 at 258.

On April 25, after plaintiff rested, defendant moved for dismissal pursuant to Fed.R.Civ.P. 50(a). The Court asked defendant to postpone making his motions but would consider them having been made at the close of plaintiff's case in chief. Tr. vol. 3 at 450-3. Later that day, after defendant's last witness of the day concluded his testimony, the Court heard defendant's motion for judgment as a matter of law. *Id.* at 560. Defendant moved the Court to dismiss the case because plaintiff did not testify as to any amount of damages. Defendant argued plaintiff's failure to supplement his interrogatory answers of record effectively meant he was seeking zero dollars in damages. *Id* at 571. The Court denied the motion at that time, but reserved defendant's right to renew its motion after the close of all the evidence. The Court further directed plaintiff's counsel to produce a computation of damages which plaintiff would ask the jury to award, stating defendant is "entitled to know what to anticipate." *Id.* at 571-2.

On the morning of April 26, the fourth day of trial, plaintiff's counsel produced a hand-written set of numbers to defendant's counsel. The figures, which defendant complained did not conform to the federal rules,[1] showed that plaintiff would seek a maximum of $342,563.00 for future lost earnings[2] and between $318,840.00 and $585,560.00 for past and future pain and suffering. *See* Ex. A, Def's. Mot. New Trial. After the lunch break, however, and, according to defendant, after unsuccessful settlement negotiations, plaintiff's counsel provided defendant's counsel with a new set of damage figures, which totaled $1,659,773.00, over $500,000.00 more than the first set of figures. Plaintiff's counsel explained that the first set of numbers contained a miscalculation of

---

[1] Although the 2-page compilation was not signed by plaintiff, defendant's counsel agreed to accept it as a sworn answer.

[2] The figures appear to show future lost earnings at $8 per hour to age 67 to be $395,523.00, and at $10 per hour to age 67 to be $342,563.00.

3

days, but defendant claims plaintiff's counsel used a different multiplier rate. Tr. vol. 4 at 694-6;700-01. Defendant asked the Court for permission to use both sets of figures as sworn answers to interrogatories. The Court ruled, however, that defendant could use only the second set. *Id.* at 700. Later that day, at the close of all the evidence, defendant renewed its motion for judgment as a matter of law. The Court denied the motion. *Id.* at 715.

During closing argument, plaintiff's counsel asked the jury to award plaintiff damages for loss of future earning capacity using either the defendant's or the plaintiff's expert witness's figures. Tr. vol. 5 at 796-7. Dr. Talbert, the witness for plaintiff, testified his highest calculation totaled $395,523.00. Tr. vol. 4 at 431. According to defendant, plaintiff's counsel then asked the jury to award $1,264,250.00 as damages for past and future pain and suffering. Tr. vol. 5, 797-800. In total, plaintiff asked for damages of over $1.6 million.

Defendant argues it was deprived of the opportunity to full cross-examine plaintiff because even he did not know what numbers would be submitted to the jury. Further, defendant asserts it was denied an opportunity to take discovery to dispute the validity of the computations and could not adequately prepare for trial or develop a strategy which might have resolved the case prior to trial.

Defendant filed a motion in limine asking the Court to preclude plaintiff from offering or presenting to the jury a "unit of time" or per diem argument. After the testimony at trial had concluded, the Court ruled in defendant's favor and ordered plaintiff's counsel not to make any per diem argument to the jury. Tr. vol. 4 at 751-2. Defendant was not unaware of the range of amounts of damages plaintiff was seeking. The parties engaged in at least two settlement negotiation sessions. Plaintiff refers to a mediation session on March 1, 2007, during which he says he provided

defendant with a method of computing plaintiff's damages, yielding a $2.4 million award. Tr. vol. 3 at 573. Defendant states in its Pretrial Disclosure dated March 29, 2007, that plaintiff would not agree to settle for less than a seven-figure amount. *See* docket entry 57. Also, according to defendant, the parties discussed settlement during the course of the trial.

The Court finds defendant's claim of prejudice unpersuasive. Counsel for defendant knew before trial that plaintiff might make a per diem argument and successfully prevented his counsel from doing so. There is nothing in the record to indicate defendant was not aware of the range of damage amounts plaintiff was seeking or that plaintiff withheld any prepared computations from defendant. While the Court prevented plaintiff's counsel from presenting to the jury a "unit of time" or per diem argument, it was clear that this was the method plaintiff's counsel employed in coming up with his figures.

**2. Testimony of Jerry Ancell**

On March 20, 2007, the Court granted defendant's motion in limine, pursuant to an agreement between the parties, to preclude plaintiff from presenting any evidence at trial "concerning any wrongdoing on the part of Western Rivers . . . including, but not limited to, any evidence that concerns wrongdoing on the part of Western Rivers, paints Western Rivers in a 'bad light,' or criticizes Western Rivers in any respect whatsoever." Docket entry 56. The Court reserved the right to revisit the ruling "should circumstances associated with the trial of this matter so warrant." *Id.*

Plaintiff called Jerry Ancell as a witness and finished his direct examination of Ancell on the evening of the second day of trial. Ancell testified about the condition of the engine room where plaintiff claims he was injured, and opined that it was not a reasonably safe place to work. Tr. vol.

2 at 349. The next morning, defendant cross-examined Ancell as to any bias he might have. Ancell admitted he had dinner with plaintiff and his attorneys the night before, stated he had driven 3 1/2 to 4 hours to come to court to testify, and that plaintiff paid Ancell's wages for the day he came to testify. Tr. vol. 3 at 375, 380. After cross-examination, plaintiff's counsel asked Ancell why he was willing to come and testify at the trial. Ancell answered: "Mr. Thackston, I got my girlfriend pregnant when I was 16 years old, joined the Marine Corps, been making my living with my back my whole life, and I am an old hillbilly. And I have seen companies like Western Rivers take advantage of hard-working people, and I felt it was time for somebody to show up and tell the truth." *Id.* at 400.

Upon hearing this response, defendant moved for a mistrial on the basis that plaintiff had violated the Court's order. The Court acknowledged the testimony violated the order but did not strike the response or give a curative instruction, finding that Ancell's response could be helpful to defendant because "he obviously has something out for them." *Id.* at 401. Defendant contends it is entitled to a new trial because the Court committed prejudicial error in denying its motion for a mistrial.

The Court finds defendant was not denied a fair trial by allowing Ancell's testimony and declining to declare a mistrial. Defendant questioned Ancell about his motives in traveling to Jonesboro and suggested he might be biased based on the fact that he was dining with plaintiff and that plaintiff was reimbursing Ancell for the wages he lost by coming to testify. As the Court observed in denying defendant's motion for a mistrial, Ancell's response, which included some totally unanticipated remarks, could easily be interpreted by the jury as showing his bias against

defendant and, therefore, weigh on his credibility. The Court finds defendant fails to establish a basis for a new trial.

## Motion for Judgment As a Matter of Law

The grant of judgment as a matter of law "is appropriate 'only if the evidence points all one way and is susceptible of no reasonable inferences sustaining the position of the non-moving party.'" *Hauser v. Kubalak,* 929 F2d 1305, 1307 (8th Cir. 1991)(quoting *Glass Design Imports, Inc. v. Import Specialties,* 867 F.2d 1139, 1142 (8th Cir. 1989)(citation omitted)). The standard that must be met is a rigorous one. The Court must

> (1) consider the evidence in the light most favorable to the prevailing party, (2) assume that all conflicts in the evidence were resolved in favor of the prevailing party, (3) assume as proved all facts that the prevailing party's evidence tended to prove, and (4) give the prevailing party the benefit of all favorable inferences that may reasonably be drawn from the facts proved.

*Western American, Inc. v. Aetna Cas. & Sur.Co.,* 915 F.2d 1181. 1183 (8th Cir. 1990). The Court must then deny the motion "if reasonable persons could differ as to the conclusions to be drawn from the evidence." *Id.* The jury returned a verdict in favor of plaintiff on his negligence claim under the Jones Act. Defendant asserts there was insufficient evidence to support a finding of causation.

 "In Jones Act cases the verdict must stand if 'the proofs justify with reason, the conclusion that employer negligence played any part, even the slightest, in producing the injury or death. . . .'" *Alholm v. American S.S. Co.,* 144 F.3d 1172, 1178 (8th Cir. 1998)(internal citation omitted). The plaintiff's burden in a Jones Act case has been described as "featherweight." *Cella, II v. United States,* 998 F.2d 418, 427 (7th Cir. 1993). "In a Jones Act case, a trial court can direct a jury verdict against a plaintiff '*only* in those extremely rare instances where there is a *zero* probability either of employer negligence or that any such negligence contributed to the injury of an employee.'"

*Southard v. Indep. Towing Co.,* 453 F.2d 1115, 1118 (3rd Cir. 1971)(emphasis in original)(citation omitted).

Plaintiff claims he was injured when he fell down from the starboard shaft alley platform and stairs. He testified he fell sometime between January 29 and January 31, 2005, and continued to work as an oiler until the regular oiler, Ancell, returned to the boat on February 15, 2005. Tr. vol. 2 at 123-4. Thereafter, plaintiff worked aboard the vessel as a deckhand, performing heavy manual labor. *Id.* at 226. Plaintiff testified that oil on the stairs caused him to fall, and the oil was not there on his prior watch. *Id.* at 128-9. Plaintiff said he thought he had pulled a muscle when he fell. *Id.* at 132-3. Plaintiff testified he filled out an accident report on February 11, 2005, because his pain kept getting worse. *Id.* at 140. He said his leg was hurting, not his back. *Id*. at 227-8. When plaintiff got off the vessel on February 22, *id.* at 226-7, he sought treatment. A nurse practitioner prescribed muscle relaxants for his pain. When plaintiff went back to the doctor two weeks later, he was referred for an MRI. The MRI revealed a herniated disk in his back. Tr. vol. 2 at 162-4. Plaintiff underwent two surgeries because of the herniated disk

> Defendant argues plaintiff
>
> may not have herniated his disk as a result of his fall, but instead may have herniated his disk after he returned to the deck and was lifting ratchets, carrying wires, and doing the heavy labor required of a deckhand. It is equally likely that the disk was not herniated when [plaintiff] fell, but the disk subsequently ruptured while he continued to work in the engine room as an oiler, which then caused the pain in his leg to increase.

Def's. Mem. in Supp. at 7 [docket entry 104]. Defendant also asserts plaintiff's neurosurgeon did not render any medical opinion that the slip and fall was related to plaintiff's back injury. Defendant points out Dr. Tonymon's testimony that when a disk ruptures, a person experiences "a pretty significant back pain, and some people identify that pain as different than their regular run-of-the-

8

mill muscle and ligament pain." Tr. vol. 2 at 278-9.  Defendant argues that if plaintiff had herniated his disk when he fell, he would have experienced a different type of pain and some significant back pain, and he never complained of back pain.

In *Sentilles v. Inter-Caribbean Corp.,* 361 U.S. 107 (1959), a seaman was thrown to the deck during heavy seas.  He brought suit under the Jones Act seeking damages, claiming that the fall activated or aggravated a latent tubercular condition.  None of the three medical witnesses who testified said that the accident in fact caused the illness.  One testified that the tuberculosis "might" have been a consequence of his accident.  Another said the accident and the plaintiff's pre-existing diabetic condition most likely aggravated the tuberculosis.  The third said the accident "probably aggravated" the plaintiff's condition. *Id.* at 109.  The jury found that the accident had legally caused the injury. The court of appeals reversed. In reversing the court of appeals to preserve the jury determination regarding medical causation, the Supreme Court noted:

> The jury's power to draw the inference that the aggravation of petitioner's tubercular condition, evident so shortly after the accident, was in fact caused by that accident, was not impaired by the failure of any medical witness to testify that it was in fact the cause. Neither can it be impaired by the lack of medical unanimity as to the respective likelihood of the potential causes of the aggravation, or by the fact that other potential causes of the aggravation existed and were not conclusively negated by the proofs. . . . The members of the jury, not the medical witnesses, were sworn to make a legal determination of the question of causation.  They were entitled to take all the circumstances, including the medical testimony, into consideration.

*Id.* at 109-110.

No one disputes that plaintiff fell while on the ship or that he suffered an injury, a herniated disk.  Defendant asks the Court to set aside the jury's finding of negligence on the basis that plaintiff could have herniated his disk sometime after his fall, when he continued to work in the engine room as an oiler, or when he returned to work as a deckhand performing heavy labor.  Defendant points

out that plaintiff never complained about back pain until after he left the boat and had received medical treatment.

As the Supreme Court said in *Sentilles*, it is not the function of a court to search the record for conflicting circumstantial evidence which supports alternative theories of causation, but rather the focal point of judicial review in such cases is the "reasonableness of the particular inference or conclusion" drawn by the jury. 361 U.S. at 110 (internal quotation omitted).  The Court finds the jury's conclusion that the fall caused plaintiff's herniated disk was not an unreasonable one.  The evidence shows plaintiff experienced leg pain after his fall, and Dr. Tonymon testified that a ruptured disk may get on a root nerve and cause leg pain.  Tr. vol. 2 at 279.  The Court, therefore, finds that defendant's motion for judgment as a matter of law should be denied.

## Conclusion

IT IS THEREFORE ORDERED that the motion for new trial [docket entry 101] and the motion for judgment as a matter of law [docket entry 103] are denied.

DATED this 12th day of June 2007.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE